UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

GARY A. BAILEY                                CIVIL ACTION NO. 15-cv-0439

VERSUS                                        JUDGE WALTER

BURL CAIN, ET AL                              MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Bossier Parish jury found Gary Anthony Bailey, Jr. guilty of simple burglary. The conviction was affirmed on appeal. State v. Bailey, 115 S.3d 739 (La. App. 2d Cir. 2013), writ denied, 129 So.3d 530 (La.). Petitioner's original 10-year sentence for the burglary was enhanced by a multiple offender proceeding, where he was adjudicated a fourth-felony offender and sentenced to life in prison without benefit of parole. The sentence was affirmed. State v. Bailey, 152 So.3d 1056 (La. App. 2d Cir. 2014), writ denied, 178 So.3d 988 (La. 2015). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

Petitioner was convicted of burglary in connection with the theft of a window air conditioner unit from a mobile home in south Bossier City. One element of burglary is the unauthorized entry of a dwelling or structure. Petitioner admitted on the stand that he stole the air conditioner, but he denied that he entered the mobile home to do so. He continues

to challenge the entry element in his habeas petition. A review of the trial evidence shows that there was sufficient evidence of that element to support the conviction.

Tracy Bailey and his girlfriend, Kristine Doss, lived in the mobile home park where the theft occurred. They testified that they were arriving at their home around midnight on September 23, 2011 when they saw a man walking down the street. The man went toward a neighboring mobile home. Tracy and Kristine testified that the man was not deterred by their presence and was plainly trying to steal the air conditioner, so they called the police.

Both Tracy and Kristine testified that they heard glass breaking, and the window unit fell inside the mobile home. The man then climbed in through the window and, soon after, walked out through the front door, carrying the window unit. Neither witness expressed any doubt that the man went inside the home, and Tracy said he could hear "shifting" noises while the man was inside. Tracy and Kristine both described the man as wearing pants or long shorts. It was dark in the area, but there was a street light about 80 feet away. Neither witness remembered seeing any tattoos on the man, who left the area before law enforcement officers arrived. On instruction of the police dispatcher, the witnesses did not follow the man.

Sheriff Deputy Justin Dunn testified that K-9 Tigo tracked Petitioner to a nearby pasture, where Petitioner was bitten and arrested. Petitioner was wearing camouflage pants and no shirt. He had several tattoos on his arms and body. Tigo next tracked Petitioner's scent to a shed behind another mobile home in the park. Dunn testified that he made contact with the resident, who was Petitioner's mother. She told police that he son stayed in her shed when he was in town. Dunn testified that she signed a consent to search form. Sgt.

Kenneth Johnson corroborated that the written consent was received. Officers searched the shed and found the window unit inside.

David Horton, the owner of the trailer, was called to the scene by police. Horton identified the window unit as his, and he recognized a plastic tag that he had left on the cord. Horton testified that the trailer was a rental unit, and he had been there at about 2:00 p.m. that day to get it ready for a new tenant. He left the unit in perfect move-in condition, and he locked both the deadbolt and the doorknob. When he went in the mobile home with police, he saw that the deadbolt was unlocked, but the doorknob was locked. He explained that the doorknob was self-locking so that a person inside could exit without turning the lock. He pointed out to police that the refrigerator had been pulled out from the wall a foot or two and turned. Horton joked that perhaps the burglar determined that the refrigerator was heavier than he could carry.

Petitioner, who was 43 at the time of this offense, testified that he had a lengthy criminal history that began at age 17 and included convictions for burglary, molestation of a juvenile, and several other crimes. He admitted that he took the air conditioner, saying, "Yes, sir, I stole it." He said he knew the home was vacant, and he had been thinking about taking the air conditioner. He started drinking that night and because of "being drunk, utter stupidity," he decided to go get the air conditioner.

Petitioner said he pushed up on the unit, which broke the window, and then he pulled it out of the window and carried it to the shed. He denied that he ever went inside the mobile home, and he said that he knew it was vacant with nothing inside to steal. Petitioner said that after returning to the shed, he looked outside and saw a patrol car in the area, so

he jumped a fence and went out in a pasture where he passed out and went to sleep until Tigo arrived. He noted that his injuries from the dog bites were documented, but he said he had no cuts from broken glass that might be expected if he crawled through the broken window.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

Petitioner was convicted of simple burglary, defined in La. R.S. 14:62 as the unauthorized entry of any dwelling, structure, etc. with the intent to commit a felony or any theft therein. The only contested element was whether Petitioner entered the home. The state appellate court noted that Louisiana law holds that an entry is committed if any part of the intruder's person crosses the plane of the threshold. The court reviewed the testimony discussed above and found that it was sufficient to support the conviction under the Jackson standard. In particular, the two eyewitnesses testified that they watched a person push the window unit into the mobile home, crawl through the window, and walk out the front door carrying the window unit. Petitioner admitted that he was the man who took the air conditioner; he merely disagreed with whether he went through the window.

The state court was not persuaded that his denial deprived the conviction of sufficient evidence, and it affirmed the conviction.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state court's decision was an entirely reasonable application of Jackson to this record. Petitioner argues that the court should have overturned his conviction because Tracy and Kristine were not credible. He cites alleged inconsistencies or weaknesses in their testimony about matters such as their descriptions of his clothing, lighting in the area, and that they did not notice his tattoos. The state appellate court correctly rejected this argument because credibility determinations are within the province of the jury and are not to be reassessed on appeal. "[U]nder Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review." Schlup v. Delo, 115 S.Ct. 851, 868 (1995). The jury was tasked with deciding whether to credit the testimony of the disinterested witnesses who said the thief entered the home or that of the thief who denied

he made entry. The jury made a rational choice, and the state court reasonably affirmed the verdict under the lenient Jackson standard, so Petitioner is not entitled to habeas relief on this claim.

**Falsified Transcript; Perjury**

Petitioner argues within his sufficiency challenge, as well as in a separate claim, that the two principal witnesses gave different testimony at a preliminary examination ("PE") and that the court reporter falsely transcribed that hearing to cover up the inconsistencies. Petitioner argues that the witnesses were "schooled" by the prosecutor after the PE and got their stories straight by the time of trial. Petitioner has sought in the state and federal court to obtain the audio recordings of the hearing, which he contends will prove his claim. The state court found that Petitioner had not demonstrated a particularized need for production of the audio recordings without charge, but he could make a request under the state public records law and obtain copies for a fee. Tr. 110-11.

Petitioner contends that audio recordings will show that the witnesses gave testimony at the PE that differs from what is reflected on the PE transcript. The topics of such alleged falsifications include the clothing Petitioner was wearing and how he removed the window unit from the home. Petitioner contends that if the defense had accurate transcripts of the PE, they could have been used to impeach the witnesses' testimony at trial.

This claim is built on nothing but speculation. Petitioner had ample time to develop the facts of this claim in the state court proceedings. There is no indication that he made the public records request suggested by the trial judge or took other steps to obtain the

recordings.  Review of habeas claims in federal court under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  That record reflects a reasonable decision and is not indicative of any constitutional violation that would warrant habeas relief.  The undersigned has issued a separate order that, for similar reasons, denies a request to compel a federal hearing regarding the audio tapes of the PE.

**Illegal Search and Seizure**

Two police officers testified at trial that Petitioner's mother signed a written consent form to allow them to search the shed.  The form was not introduced into evidence, and Petitioner now contends that there was no such form.  This claim was raised and rejected on direct appeal.  The state court noted that (if Petitioner was not provided the consent form before trial) Petitioner failed to seek production of the form or object to the testimony of either officer who testified that such a form was signed.  State v. Bailey, 115 So.3d at 747-48.  He thus waived the issue by lack of objection.

A federal habeas court is generally barred from reviewing Fourth Amendment claims.  Stone v. Powell, 96 S.Ct. 3037 (1976).  In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  96 S.Ct. at 3037.  To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim.  Stone bars federal habeas consideration of that claim whether

or not the defendant employs those available processes. Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).

Louisiana law provides a process to file motions to suppress and litigate Fourth Amendment search and seizure claims. La. C. Cr. P. art. 703; State v. Coleman, 188 So. 3d 174, 192 (La. 2016), cert. denied, 137 S. Ct. 153 (2016). Petitioner may not have taken advantage of that opportunity, but its availability nonetheless bars this habeas claim. The Stone bar applies even when a petitioner claims that a state court has made an error in the processing of a Fourth Amendment claim. Moreno v. Dretke, 450 F.3d 158, 167 (5th Cir. 2006).

**Violation of La. C. Cr. P. art 230.2(A)**

Louisiana Code of Criminal Procedure article 230.2(A) provides that an officer who arrests a person without a warrant shall promptly complete an affidavit of probable cause and submit it to a judge for a determination of probable cause within 48 hours of arrest. Petitioner argued on appeal that the article was violated. The appellate court stated that the arrest report cited by Petitioner in support of the claim was not part of the record on appeal, so the assignment of error was rejected. State v. Bailey, 115 So.3d at 747.

This claim does not provide grounds for habeas relief. First, the article itself states that if a probable cause determination is not timely made, the arrested person is to be released on his own recognizance, but nothing precludes re-arrest and resetting of bond for the same offense. At most, Petitioner may have been entitled to (temporary) release from custody without posting bail, but violation of the article did not entitle him to avoid criminal responsibility for his actions. More important, federal habeas relief is available

only on the grounds that a prisoner is in custody in violation of the federal Constitution or laws. The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). Habeas relief is not available even if Petitioner is correct on this state law issue.

**Ineffective Assistance of Counsel**

    A. Introduction

Petitioner argues that his trial attorney rendered ineffective assistance in a number of ways. To prevail, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

    B. Habeas Review

Petitioner's Strickland claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

Petitioner has argued in some filings that his claims were not adjudicated on the merits. He appears to contend that anything less than a fully reasoned discussion means

the claim was not decided on the merits. Generally, when a state court does not rely upon a procedural ground when it denies a claim, it has adjudicated the claim on the merits. Petitioner raised his Strickland claims on direct appeal, and no procedural bar was evident or cited by the state court. Under these circumstances, the claims were adjudicated on the merits. Woodfox v. Cain, 772 F.3d 358, 371-72 (5th Cir. 2014); Gallow v. Cooper, 505 Fed. Appx. 285, 290-91 (5th Cir. 2012). And the lack of a detailed or reasoned decision does not preclude habeas deference to the state court decision. "Section 2254(d) applies even where there has been a summary denial." Pinholster, 131 S.Ct. at 1402.

### C. No Motion to Suppress

Petitioner argues that counsel was ineffective because he did not file a motion to suppress the air conditioner that police found in the shed. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).

Petitioner argues that a motion to suppress the key piece of physical evidence would have succeeded. Two deputies testified that Petitioner's mother signed a consent to search form, but Petitioner contends that there was no such form and that any consent by his mother was to search her house and not her shed. It does not appear that the consent form is in the record before this court or that it was introduced as an exhibit at trial. It was

referenced by Deputy Dunn, who testified that he made contact with Petitioner's mother, who advised that Petitioner stayed in the shed. Petitioner testified that he stayed in the shed when he was in town and had been drinking, because his mother would not allow him to drink in the house. Dunn said he "got a consent to search signed from her that I turned in to Sgt. Johnson." The prosecutor responded, "Okay. That's a -- to search that shed. If you'd mark that, yeah, okay." Tr. 141. This somewhat suggests that a physical copy of the consent form may have been present and marked in the courtroom, but it does not appear to have made its way into the record. Sgt. Johnson also testified that Petitioner's mother signed a consent form. Tr. 148.

Because the search was not challenged in a pre-trial motion, it is not unusual that the consent to search form was not admitted as an exhibit. Petitioner attempts to take advantage of that absence by contending that the form never existed. There is, however, unchallenged testimony from two officers that the form was signed. Petitioner also attempts to take advantage of a few words in Johnson's testimony to argue that his mother consented to the search of her house but not the shed. The context of Johnson's testimony undermines this argument.

Johnson began by describing how officers came upon "a shed" and could see through a window that the air conditioner unit was inside on the floor. Johnson himself went over, looked through an open door, and saw the unit on the floor. He said he then made contact with "the person that owned this trailer" who turned out to be Petitioner's mother. He testified that she said her son "stays in this trailer" and "stays in it all alone." Johnson said they asked her for permission "to look in the trailer" and she gave permission

"to enter the trailer" by signing the permission form. He then went on to describe photographing the shed and the window unit. Tr. 148-49. Johnson did refer to the trailer a few times, but the context of his remarks makes clear that police wanted to search, and obtained consent to search, the shed where they saw the stolen property. There was no reason for them to ask to search the mother's trailer, when the stolen item was already known to be in the shed.

Petitioner argued on direct appeal that his counsel was ineffective for several reasons. The state appellate court held that the issues were capable of resolution on direct appeal and that there was no showing that trial counsel was deficient. That decision was a reasonable application of <u>Strickland</u> with respect to this claim because Petitioner cannot show that his Fourth Amendment claim was meritorious. There was uncontested testimony that his mother signed a consent to search form with regard to the shed, and Petitioner's arguments that the consent was to search another building lack sufficient support to merit relief.

**D. Uncalled Witnesses**

Petitioner argues that he asked counsel to subpoena certain witnesses who were not called. He cites in support a letter (Tr. 31-32) in which he asked that witnesses be subpoenaed for a preliminary hearing. The witnesses listed are those who did testify at trial plus a couple of other law enforcement officers. Petitioner's memorandum makes specific reference to only one of them, Officer Liddell, who he says could have contested the testimony of Tracy that Petitioner pushed the air conditioner inside the trailer and crawled inside it.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000). For Petitioner to demonstrate the requisite Strickland prejudice, "[he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Id. Evans reversed a district court that had granted habeas relief on a similar Strickland claim. The district court was faulted for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense. See also Bruce v. Cockrell, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial."). Petitioner did not offer any evidence in the state court proceedings from Officer Liddell regarding what his testimony might have been. The state court's denial of this unsupported claim was reasonable.

**E. Coerced to Testify**

Petitioner argues that his attorney coerced him to testify and then brought out on direct examination Petitioner's extensive criminal history. Petitioner argues that this made the jury look at him with hatred and was not effective assistance. The record shows that, after the State rested, defense counsel asked for a few minutes to discuss with Petitioner whether the defense would present evidence. Tr. 171. The court recessed for lunch, and afterward Petitioner took the stand. Defense counsel began by asking him about his background, family, and education. When he asked Petitioner what he did after high school, Petitioner answered, "I went to prison." Petitioner then explained that he

committed his first felony when he was 17, and he and counsel then discussed other aspects of his criminal history. Tr. 173-77.

There is zero evidence in the record to suggest that counsel in any way coerced Petitioner to testify. Petitioner's sole defense was that he did not enter the home, and he had no evidence other than his own testimony to offer in response to the State's evidence. Petitioner expressed no reservations about testifying and apparently did so in an effort to defeat the entry element of the crime.

Counsel acted appropriately in exploring Petitioner's criminal history during direct examination. That is a routine practice by defense counsel when a client who takes the stand will inevitably be impeached by the prosecutor based on his prior convictions. Competent defense attorneys almost always elects to bring out that harmful information on direct to (1) steal the thunder from the prosecution and (2) avoid looking like the defense was trying to hide the information from the jury. There is no evidence or law to support this claim, so the state court was reasonable to reject it.

### F. Other Arguments

Petitioner includes in his federal petition a separate argument that the court refused to appoint him effective counsel. He contends that he complained about his attorney but was told that he had to keep the one who was assigned to his division. He also writes that that he wishes to state a claim of ineffective assistance of counsel in connection with every other argument that he raises in his petition. Petitioner has not established grounds for relief under Strickland, so his complaint against the court for not appointing competent

counsel also fails. None of the other substantive claims in the petition have merit, so the omnibus Strickland claim lacks merit as well.

**Discovery Denial**

Defense counsel filed a motion for discovery and production of documents several months before trial. Petitioner also filed several pro se motions for discovery, as well as requests for photos, medical records, or similar information. The trial court denied the pro se requests and directed Petitioner to obtain such material from his attorney. Petitioner argues that he did not obtain the discovery information until after the trial, which (1) kept him from knowing that there was no consent to search form and (2) deprived him of photos that he says could have proved the physical impossibility of him entering the window in the manner described by the State's witnesses.

Petitioner raised those arguments on direct appeal. The appellate court reviewed the facts and found that there was "nothing in the record before this Court that supports the argument that Defendant was denied discovery." State v. Bailey, 115 So.3d at 746-47. The record contains several rulings of the trial court that noted the State complied with discovery and told Petitioner to obtain the information from his counsel. Id. The record supports that assessment, so the denial of this claim was reasonable.

Petitioner appears to be unhappy that the court did not grant his pro se motions and order that discovery be sent directly to Petitioner rather than his attorney. Louisiana jurisprudence holds, "A trial court is not required to entertain pro se motions when a defendant is represented by counsel and entertaining the motions will lead to confusion at trial." State v. Nixon, 222 So. 3d 123, 133 (La. App. 2 Cir. 2017). "While an indigent

defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative." Id. That is consistent with the federal constitution, which does not require a state court to, absent extraordinary circumstances, recognize pro se motions filed by a defendant who is represented by counsel. Tarter v. Hury, 646 F.2d 1010, 1014 (5th Cir.1981).

**No Contradictory Hearing**

Louisiana Code of Criminal Procedure Article 729.1(A) states that a motion for discovery shall not be denied without a hearing unless it appears on the face of the motion that the movant is not entitled to relief. Petitioner argues that the article obligated the trial court to set a hearing on his discovery requests.

A habeas applicant must claim violation of a federal constitutional right. A claim that the trial court improperly applied state law does not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). Petitioner also tries to phrase this claim as an ineffective assistance claim, arguing that counsel should have requested a hearing. Petitioner has not established the absence of that request was either incompetent performance or prejudiced the defense within the meaning of Strickland.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14)

days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

  THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of February, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge